SARAH M. SHAW and MARTINA POWELL, Executrices of the Last Will and Testament of Mary S. Harrington, deceased, LINA M. HARRINGTON, Executrix of the Last Will and Testament of Albert Harrington, deceased, BENJAMIN F. HARRINGTON, WILLARD HARRINGTON and JOHN J. HARRINGTON,

*vs.*

WILLIAM M. HUGHES, Administrator d. b. n. c. t. a. of William M. Harrington, deceased, et. al.

*Kent, Dec.* 17, 1919.

A will giving all of the testator's property to his wife "and her assigns forever," giving her the option to hold it and receive the income, or to sell it, use the proceeds, or reinvest them, and providing that on her death the unsold real estate, anything remaining of the proceeds of sales after paying all just debts, and whatever personal property might be left, should go to the brothers and sisters of the testator and the wife, gave her only a life estate.

An absolute estate, given by one item of a will, can be cut down to a less estate by subsequent parts of the will only by a clear manifest and unmistakable purpose, and it is not sufficient to raise a doubt whether there be a clear devise to the first taker.

Where there is a gift for life in express terms, a power of disposition does not enlarge it to a fee simple, but when an absolute power of disposition is added to a general gift, not specifying the quality of the interest, the devisee takes a fee.

A qualified power of disposition, such as a power to use or dispose of, property for the support of the beneficiary, does not create a fee simple, whether annexed to a life estate expressly given, or to a general devise not specifying the quality of the estate.

Where a will devised and bequeathed property to the testator's wife with power of disposition, but contained a gift over of property undisposed of "after paying all just debts," the quoted words authorized payment of unpaid debts contracted by the wife in her life for her support, but did not enlarge the quantity of the estate given her.

BILL FOR THE CONSTRUCTION OF A WILL. The hearing was on bill and answers, the facts being these: William M. Harrington, of the town of Harrington, who died in 1898, by will dated March 3, 1886, probated in Kent county, disposed of his property as follows:

"Item 1.  I give, devise and bequeath unto my wife, Mary S. Harrington, and to her assigns, all my estate, property and effects of whatsoever kind, real, personal or mixed of which I may die seized and possessed, to her and her assigns, forever.

"Item 2.  My will and desire is that my said wife, Mary S., at her option may hold all or any part of my said property and receive the rents, issues and profits thereof and apply the same to her own sole and separate use and benefit without any restrictions, otherwise if she shall deem it to her best interest she may at any time after my decease at her option, sell and convey all my said real estate and personal property or any part thereof either at public or private sale, at such times, on such terms and in such manner as she may deem best, and receive the purchase money therefor, and receipt for the same, and apply the proceeds of the sale thereof to her own use, for her own support, or she may, at her option, reinvest the moneys, arising from the sale of my said real estate and personal property or any part thereof, in such investments or securities as she may deem to her best interest and receive the interest and profits arising out of said investments and in like manner apply the same to her own use and support, and my said wife, Mary S., is hereby authorized to make and execute good and sufficient deed or deeds of conveyance in fee simple for all or any part of my said real estate to the purchaser or purchasers thereof which she may sell under the provisions of this item of my will and such deed or deeds of conveyance made and executed by her shall be as good and valid in law as if I had made and executed deed or deeds of conveyance for my said real estate jointly with my said wife, in my lifetime.

"Item 3.  If at the death of my said wife, my said real estate, or any part thereof, shall have not been sold and conveyed by her, the whole or any part thereof, not having been sold and conveyed by her and held by her at the time of her decease, I give and devise the same unto all my brothers and sisters and to the brothers and sisters of my said wife, Mary S., who may be living at the time of her death and to the children of my brothers and sisters and the children of the brothers and sisters of my said wife, now dead, or may be dead at the time of her death, who are living at the time of her death, each of my brothers and sisters and each of the brothers and sisters of my wife to share and share alike, and all the children of any deceased brother or sister of my own or of my said wife to represent the share that their father or mother would have inherited if they had been living at the time of her death, I give and devise the same unto them, their heirs and assigns forever, in the proportions above mentioned.

"Item 4.  If my said wife shall sell and dispose of all of said real estate, during her lifetime and there shall be none remaining at the time of her death and if there shall be any moneys, investments or effects remaining, out of the proceeds of the sale of said real estate and personal property, after paying all just debts, I give and bequeath the same unto all my brothers and sisters, and to all the brothers and sisters of my said wife, Mary S., who are living at the time of her death and to the children of any deceased brother or sister

of my own and to the children of any deceased brother or sister of my said wife, who are living at the time of her death, together with whatever personal property hereinbefore mentioned and bequeathed which may be left at her death, to them, their heirs and assigns, forever, in the same manner in the same proportions and shares mentioned and provided in item 3 of this my last will and testament."

Mary S. Harrington was granted letters of administartion c. t. a. on the estate of her husband, no person having been appointed executor.

The testator at the time of his death was seized and possessed of a mortgage for thirty-four hundred dollars; a farm in Mispillion hundred, and a tract of land near Harrington. Mary S. Harrington assigned the mortgage, receiving from the assignee the principal debt and accrued interest; sold the farm for $1,300.46 and the other tract for $800.00; thus receiving an aggregate of $5,500.46. Mary S. Harrington died September 3, 1918, and by her will merely disposed of household goods, wearing apparel and kitchen furniture. The executors of Mary S. Harrington and the persons entitled to her personal estate under the intestate laws filed a bill claiming that all the real and personal estate of William M. Harrington was devised and bequeathed to his wife absolutely, and that the fund of 5,500.46 belonged to her estate.

The defendants in the bill were the administrator d. b. n. c. t. a. of William M. Harrington and the children of his brothers and sisters living at the death of his widow, all of his brothers and sisters having died in her lifetime. These defendants claim that the widow of William M. Harrington did not take her husband's estate absolutely, but that after her death the moneys received by her as above stated passed under his will to the defendants, children of his deceased brothers and sisters.

In paragraph eight of the bill it was stated that all of the personal property in the possession of Mary S. Harrington at her death was in custody of her executrices, and that the sum of $5,-500.46 "is mingled with and included in the said personal estate."

*William Watson Harrington,* solicitor for the complainants, representing the executrices and legal representatives of Mary S. Harrington, summarized his contentions, as follows:

"In conclusion, we submit, that the first item of the will, undoubtedly, creates a fee simple estate in Mary S. Harrington, by the use of technical language, as well as by the expressed intent of the testator;

"That, at the least, it creates a fee simple estate, because it is a devise and bequest in general and in definite language, with an expressed power of sale by reason of the use of the word 'assigns,' as well as by the use of that word in connection with the word 'forever.'

"That the subsequent clauses, at the most, are mere optional, suggestive or advisory clauses;

"That, if they are anything more than that, they are merely an attempt to fetter and restrict a fee simple estate already given. The devise and bequest of a remainder over, as well as the provision in relation to the application of the proceeds of the sale of real estate, and the interest on investments therefrom, if the latter are anything more than mere suggestons, are merely concrete examples of this rule;

"That, considering the fact that it has been held in Delaware, as well as generally, that every presumption is against the reduction or limitation of a preceding clear gift, and that it is not enough for the subsequent language to raise a doubt; not enough for it to raise a mist; that it is not enough that it is probable that such a result was intended, but the language relied on must be expressed in unequivocal language, and must be equally clear and intelligible as the preceding clause giving the fee and must indicate an intention to that effect, with reasonable certainty, the requirements of the rule have not been met and Mary S. Harrington took a fee simple estate under the will of her husband, which passed under her will to the complainants in this bill.

"While the respondents will, undoubtedly, attempt to rely on the usual rule, as to the last clause in the will being the operative one, we submit that this rule is based on mere fiction, and that it is only natural that it should give way, as it does to the rule just stated."

*James H. Hughes*, solicitor for the defendants, representing the administrator d. b. n. c. t. a. of William M. Harrington and the beneficiaries under his will, summarized his views, as follows:

"First: Mary S. Harrington is given but a life estate under the will of her husband. The intention to give but a life estate appears from every item of the will, and when the will is read, as a whole, this intention is too clear to leave even the slightest doubt.

"Second: That the power of sale, the right to apply the proceeds to her own use for her support, the right to invest it and apply the interests and profit to her own use and support and any other powers given her by said will did not enlarge such estate to a fee, but are consistent with a life estate.

"Third: That at her death what remained of the property of William M. Harrington, whether lands, money, investments or of any other form, clearly went to the brothers and sisters of William M. Harrington and Mary S. Harrington and the children of such of them as were dead before or at the death of his widow."

THE CHANCELLOR.   The bill is by the personal representatives of Mary S. Harrington and in effect one for instructions as to the proper distribution of assets which came to the decedent from her husband, William M. Harrington, under his will, and the will to be construed is his and not hers.   All parties interested in both estates are before the court, and their respective rights may, therefore, be adjudicated fully here.

: In general terms, there was a general devise and bequest by William M. Harrington of all of his property to his wife "and her assigns forever."   She was given the option to hold it and receive the income of it for her own use. . She could also sell and convey it; receive and use the purchase money, or reinvest it and receive and use the income from the investments.   At her death the real estate, if not theretofore sold by her, was devised by the testator in fee to his and his wife's brothers and sisters living at her death, and the children of his and her brothers and sisters dead at his or her death, with representation by stocks.   If his wife should sell all of the real estate, and there be any moneys, investments or effects remaining out of the proceeds of sale of the real and personal property, then "after paying all just debts," the testator gave the same "together with whatever personal property hereinbefore mentioned and bequeathed which may be left at her death" to all of his and his wife's brothers and sisters living at her death, and to the children of his or her deceased brothers or sisters living at her death.

Two distinct and clearly defined purposes appear in the will, taken as a whole: (1) A gift of all his property to his wife for her support; and (2) a gift to others of whatever of his estate she did not in her life use for her support.   To effectuate these purposes it must be found that the wife took only a life estate, and took it by implication, for it was not given in express words.

Though it was urged that by the first item of the will an absolute estate was given by the use of the words "estate,"

"property" and "assigns," and that it was not cut down to a lesser estate by other words in the will, still it was admitted, as it must have been, that even a clear, absolute gift may be so cut down where the testator with reasonable certainty has indicated in other parts of the will the intention to so cut it down. The Court of Errors and Appeals did this in the case of *Doe d. McColley v. Lampleugh*, 3 *Houst.* 461, though it was urged that to do so would produce a result repugnant to the nature of the first devise, which it was claimed was a devise in fee simple. This is but another application of the general rule so often stated and applied by our courts that the testamentary intention must prevail unless it be contrary to law.

The first question, therefore, is not whether by the first item an absolute estate was given, but whether if it be given there is in subsequent parts of the will a clear, manifest and unmistakable purpose to limit it to a lesser estate. It is not sufficient to raise a doubt where there be a clear devise to the first taker. But before considering this feature it must be noted that there is not a clear absolute devise, whether the first item be considered by itself, or with the rest of the will. Though the words "and to her assigns" might in some connections imply an absolute gift, yet taken in connection with the subsequent gift of a power of conversion, these words are naturally and logically intended to refer to those persons to whom his wife in her lifetime transferred his property. It could not have meant all persons who should succeed to the property from her, for that would include her devisees, whereas she was not given a power to dispose of the property by will. Assuming, however, that by the first clause there was an absolute gift, it is equally clear that inasmuch as it was followed by a right of disposition for his wife's support and a gift over of the part remaining undisposed of for that purpose, there was a clear, manifest and unmistakable purpose to give to his wife an estate less than a fee simple or absolute estate.

As to the legal effect of giving a power of disposition of the property, the following principles have been established. Though there are some exceptions, courts have very generally held that where there is a gift for life in express terms, a power of disposition does not enlarge the gift to a fee simple. When an absolute power

of disposition is added to a general gift which does not specify the quality of the interest, the devisee takes a fee. 2 *Alexander's Commentaries on Wills*, §§ 929, 973.

It also seems to be a clearly settled rule that a qualified power of disposition does not create a fee simple estate whether the power be annexed to a life estate expressly given, or to a general devise which does not specify the quality of the estate. This principle is always applied when the gift is followed by a power to use or dispose of the property for the support and maintenance of the beneficiary. In cases where there is superadded to such a gift for support a gift of what remains undisposed of by the first taker, it is always regarded that the first taker took a life estate only. The following cases support these last two propositions:

In *Stuart v. Walker*, 72 *Me*. 145, 39 *Am. Rep*. 311, the court gave a very clear exposition of the law as to the effect of a power of disposal annexed to a gift made in general words. The effect of the power of disposal depends, the court said, on whether it is qualified or unqualified. If unqualified the gift over is void as repugnant. The court then said:

"But where the power of disposal is not an absolute power, but a qualified one, conditioned upon certain event or purpose, and there is a remainder or devise over, then the words last used do restrict and limit the words first used and have the force and efficacy to reduce what was apparently an estate in fee to an estate for life only. Thus: A gives an estate to B, with the right to dispose of as much of it, in his lifetime, as he may need for his support, and if anything remains unexpended at B's death, the balance to go to C. Here there may be something to go over. B is to dispose of the estate only for certain specified purposes. He can defeat the remainder, only by an execution of the power. The clear implication of such a bequest, taking all its parts together, is that B is to possess a life estate. · Here a life estate is implied, and is not expressly created." 72 *Me*. 149.

In *Brookover v. Branyan*, 185 *Ind*. 1, 112 *N. E*. 769 (1916), there was a general gift of all the testator's property to his wife with power to sell and convey it "for her use." By the next clause it was provided that "if any of said property should be left at the death of my wife," it should go to a daughter if then living, etc. The wife did not sell or convey the property in her life, but disposed of it by will. The question was whether she took a fee or life estate. It was held that though the first clause was sufficient

to vest a fee, yet the intent was to be found by considering all the relevant portions of the will and in the light of the surroundings of the testator when the will was made. It was considered that the power of disposition was limited to her use, i. e. support and maintenance, taking into consideration the value of the estate and her station in life, and did not authorize a gift or devise of it by her. The court then said:

"A limited power of disposition is repugnant to the idea of a devise of a fee simple which is consistent only with the theory of unlimited power to convey and devise * * * *. On the other hand, a power to convey a fee is entirely consistent with a devise for life."

It was held, therefore, that in view of this limited power and the evident desire of the testator to care for the daughter, the wife took only a life estate.

The case of *Chase v. Ladd*, 153 *Mass.* 126, 26 *N. E.* 429, 25 *Am. St. Rep.* 614, and 155 *Mass.* 417, 29 *N. E.* 637, was one where a testator gave to his wife the residue of his estate "to her own use and behoof forever," and provided that if any of the property given to her should not be expended by her for her support and maintenance during her lifetime, it be disposed of in a manner directed by the will. This was found to be a life estate only, with a power to use so much of the estate as was reasonably necessary for her support and maintenance. Funds in the hands of the widow which were the proceeds of the sale of the testator's property belonged to his administrator, and not hers.

In *Kent v. Morrison*, 153 *Mass.* 137, 26 *N. E.* 427, 10 *L. R. A.* 756, 25 *Am. St. Rep.* 616, there was a gift by will to the testator's wife of all of his property, "giving her full power to sell and convey, the same by deed (part or all of it), and the proceeds thereof to be used for her comfort, and otherwise as she may think proper." This was followed by a gift to his sons after her death of all that remained not specifically disposed of by his wife. The Court found no intention to give the wife a fee simple, saying.:

"There are no words describing the estate given which are technically words of inheritance; a power to sell and convey the property in fee is expressly given, which would be unnecessary if the testator intended to devise the property in fee; and the power given is a power to sell and convey by deed, which, by implication, excludes any power of conveying the property by will, and

such restriction upon the power of disposition is inconsistent with an estate in fee simple. All the words of the will are satisfied by holding that Mrs. Kent [the widow] took an estate for her life with a power of conveying by deed."

In the following cases it was held that a life estate coupled with a right of disposition for the support of the life tenant is not an unqualified power, and the life estate was not enlarged to a fee; *McKnight v. McKnight*, 120 *Tenn.* 431, 115 *S. W.* 134; *Emert v. Blair*, 121 *Tenn.* 240, 118 *S. W.* 685; *McGuire v. Gallagher*, 99 *Me.* 334, 59 *Atl.* 445.

In *Johnson v. Johnson*, 51 *Ohio St.* 446; 38 *N. E.* 61, a testator gave to his wife all the remainder of his property with power to sell and convey, and added that if at her death any of his property remain "unconsumed," it should go to certain persons. The Court construed it a gift for her support, and that she took a life estate only. Other cases which might be cited are *Morford v. Dieffenbacker*, 54 *Mich.* 593, 605, 20 *N. W.* 600; *Gadd v. Stoner*, 113 *Mich.* 689, 71 *N. W.* 1111; *In re Geist's Estate*, 193 *Pa.* 398, 44 *Atl.* 437.

The established general rule is thus stated concisely in 24 *Am. & Eng. Enc. of Law*, (2d Ed.) 446, with many citations:

"Many cases in the United States hold that an executory limitation is void after a gift with an absolute power of disposal, either express or implied in the first taker; for the addition of such a power makes an absolute intent of the first gift and the limitation over of what remains, whether expressly or by implication, cannot take effect. But the power of disposal must be absolute, and if the first taker's power of disposal is limited or conditional, it will not defeat a disposition over."

And in a note citing many cases it is said:

"Where the power of disposal is conditioned upon some event or purpose, as for the support of the first taker, it will not enlarge into a fee the estate to which it is attached, and which is given in general words, and the limitation over of what remains is valid."

In *Page on Wills*, § 573, *p.* 665, the author states this broad, sensible principle:

"The intention to create a life estate only is especially clear where there is a gift over to another after the death of the person for whose support the property is said in the will to be devised. Such form of devise is always held to pass a life estate only."

A careful review of the cases in Delaware did not disclose any cases in opposition to these conclusions. In *Jamison v. Craven*, 4 *Del. Ch.* 311, there was a devise to the testator's widow, "her heirs and assigns," with a gift over if she should die without having sold, conveyed or devised it by will. Chancellor Bates found that there was no clear and manifest purpose to qualify her right to dispose of the property; and that a deed made by her was good.

The principle applied in *Barnard's Lessee v. Bailey*, 2 *Har.* 56, was that a devise of land absolutely was not cut down by a right of disposal by will except to his or her kin, the restriction being repugnant to the fee simple devised. In *Bryan v. Milby*, 6 *Del. Ch.* 208, 24 *Atl.* 333, 13 *L. R. A.* 563, there was a gift to the testator's wife, and the only question was whether or not there was an obligatory or precatory trust imposed on her to give it to certain persons by her will, there being no gift to them.

Clearly, then, none of the Delaware cases, except *Newlin v. Phillips*, (*Del Ch.*) 60 *Atl.* 1068, seem to be helpful in the present case, in which there is an element not found in other cases, viz: element is a gift over following a clearly stated gift to the testator's widow for her support during her life.

The case of *Newlin v. Phillips, supra*, was this: By will a man gave all his property to his wife to use and enjoy; desired her to keep it intact in order that it might provide her a comfortable living for life; and desired that at her death such property as might be remaining be divided among certain persons. Chancellor Nicholson found that the widow did not take a fee simple in the land, or absolute ownership of the personalty; had no right to dispose of it by will; and that as to any of her husband's estate remaining the gift over was valid. It was regarded by him, looking at the whole will, as one of a class of cases where a general gift otherwise large enough to be an absolute one was cut down where there was a power of disposal for the purposes of support. The Chancellor did not base his decision on the existence of a trust, as was urged by the solicitor for the complainants. Therefore the only pertinent case in Delaware supports the view that the widow of William M. Harrington took only a life estate.

No special significance as to the quantity of her estate is found in the use of the words "after paying all just debts" in the

fourth item, and her interest is not enlarged thereby. The words refer to unpaid debts contracted by her in her life for her support, and were evidently used to make this clear as a part of the general purpose of the will.

Therefore, as the testamentary intention is clear, and that intention could not be carried out if his widow took more than a life estate, and it not being contrary to law or any established rule of judicial construction to give effect to such intention, it should prevail.

The conclusion is, that Mary S. Harrington took an estate for life only, and not an absolute estate, either in the real or personal property. Inasmuch as she had converted the real estate into personalty, but had not disposed of it by user, and it passed into the hands of her executrices, it now belongs to the beneficiaries under the fourth item of the will of William M. Harrington. As indicated above, the executrices of Mary S. Harrington are entitled to retain sufficient to pay the debts contracted by her in her life.

Let a decree be entered accordingly.